**Richard Miles WRIGHT, III, Plaintiff-Appellant,**

**v.**

**Charlene KENNEY and Ted Conrad, Defendants-Respondents.**

**No. 15129.**

Missouri Court of Appeals, Southern District, Division Two.

March 11, 1988.

Moran D. Harris, Osceola, for plaintiff-appellant.

Harold A. Kyser, Butler, for defendants-respondents.

MAUS, Judge.

Richard Miles Wright, III, as sole heir at law and sole beneficiary under a prior will, brought this action to contest the probated will of Martha Alixe Dickson and to establish a prior will. The contestant alleged lack of testamentary capacity and undue influence. The action was tried to the court. The trial court denied relief. The contestant states three points on appeal.

The evidence concerning the background and relationship of the testatrix, the contestant and the beneficiary-proponent of the probated will is sketchy. There is a dearth of evidence concerning contact between and the presence or absence of affection between the contestant and the testatrix. Neither the contestant nor the proponent testified. The evidence centered upon the testatrix's mental condition during a period of several years before her death. The following is a resume of the facts gleaned from the testimony and exhibits.

Martha Alixe Dickson died May 30, 1985, at the age of 84. The inventory of her estate, consisting of intangibles, shows the total value of her estate to be $148,964.50. Her will dated December 16, 1975, was admitted to probate. By that will testatrix devised all of her estate "to my dear friend Charlene Kenney." She further directed that Charlene Kenney have full authority to make all funeral arrangements after her death. Ted Conrad is the deceased's personal representative.

As stated, the testatrix's sole heir at law is her cousin, contestant Richard Miles Wright, III. He was the sole devisee under her will executed October 10, 1945. That will and the application for probate of that will dated January 6, 1986, show that Richard Miles Wright, III, was a resident of Tennessee.

It may be readily inferred from the record, that the testatrix lived substantially all, if not all, of her life in Appleton City. She never married. She suffered from cerebral palsy. A hospital record shows her occupation as a retired music teacher. She was described as a very outspoken person, who had few friends.

At an undisclosed time, the testatrix and Charlene Kenney became next door neighbors. By the early 1970's, Kenney was assisting the testatrix in many ways. She drove her various places, ran errands for her, and helped her with business matters.

In January, 1973, following a period of hospitalization, the testatrix decided to enter a nursing home in Appleton City. Kenney signed the admission form on behalf of the testatrix. One of the testatrix's physi-

cians, Dr. Robert Brownsberger, M.D., testified the testatrix decided to enter the nursing home primarily because of physical disabilities. Except for periods of hospitalization, the testatrix continued to reside in the nursing home until her death.

During this time, Kenney continued to help the testatrix. She took her places. One of the testatrix's physicians summarized Kenney's activities:

> Basically, since I came to Appleton City in 1972, Charlene Kenney was the one that looked after Alixe. If Alixe had a problem or if Alixe had a bill, Charlene would usually come by and check on it. If there were any problems, Alixe would simply say 'well, let me talk to Charlene' and Charlene was the one that helped us make the decisions.

Nevertheless, the testatrix continued to conduct her own affairs. She had a telephone in her room. She used the phone to order items from the drugstore and to check on bills. She wrote checks in her checkbook. She read the newspapers. She directed the sale of some of her own assets.

In December of 1975, the testatrix summoned her attorney Ted Conrad to the nursing home for the purpose of making a new will. Following a conference, her attorney prepared a new will as she directed. It was executed on December 16, 1975, with the attorney and the administrator of the nursing home as attesting witnesses. The attorney testified that Kenney had nothing to do with his summons to the nursing home and in no way participated in the preparation of the new will.

On July 14, 1976, Kenney filed a petition in the probate court seeking a declaration that testatrix was incompetent and for appointment as guardian of her estate. Doctors Brownsberger and Reed certified she was incompetent and needed a "guardian appointed because of senility." On August 4, 1976, the probate court entered judgment as prayed in the petition.

In the jury-waived trial, the proponent first presented the testimony of the attesting witnesses to the will dated December 16, 1975. That testimony established a prima facie case of due execution and testamentary capacity. The contestant then acknowledged his duty to proceed. He introduced the deposition of Dr. Jerome Thies, M.D., of Osceola. Dr. Thies had examined the nursing home records pertaining to the testatrix for 1975 and 1976. These records contained doctor's orders, medication records and nurses notes. Upon the basis of that examination, Dr. Thies had the opinion that the testatrix "was incompetent at December of 1975 and not capable of making decisions concerning her welfare, finances, et cetera."

The contestant also introduced the deposition of Dr. Glenn P. Reed, M.D., one of the testatrix's physicians for 13 years. In that deposition, Dr. Reed recognized various entries in the records of the nursing home and hospital that the testatrix had organic brain damage-congenital, organic brain syndrome, was confused and senile, exhibited certain eccentricities, and took tranquilizers. However, Dr. Reed explained why those entries did not per se establish incompetency and stated that in his opinion the testatrix in December, 1975, was competent. Dr. Thies acknowledged that Dr. Reed was in the better position to evaluate the mental condition of the testatrix and that he would give more credence to the opinion of Dr. Reed than his own.

The contestant also introduced the records of 17 periods of hospitalization of the testatrix during the years 1958 through 1974. These records contained many entries similar to those entries in the nursing home records referred to above. The records pertaining to the hospitalization of May 26, 1958, gave the name of the testatrix's nearest relative as Richard Wright, cousin. The records pertaining to her hospitalization commencing September 2, 1959, gave the name of her nearest relative as "Charlene Kenney, friend." That entry was repeated in each of the records of the subsequent 15 hospitalizations. The contestant made a prima facie case of due execution of the 1945 will and the testatrix's testamentary capacity at that time. The contestant then rested.

The proponent then moved for a directed verdict. The trial court overruled that mo-

tion as to the competency of the testatrix. It sustained the motion "as to any proof of any fraud or anything." The parties, a docket entry and subsequent judgment entry construed this order to grant a directed verdict on the issue of undue influence.

The proponent then presented the testimony of five witnesses. An administrative assistant at the nursing home testified that at the time in question the testatrix "was very competent." A man in the plumbing and heating business had known the testatrix since 1959. He occasionally saw her in the nursing home. In his opinion the testatrix was competent in December, 1975. A druggist with whom the testatrix did business, had known her since 1950. In respect to the testatrix's competency in December, 1975, he said, "She was fine at that time." A merchant, who was president of the nursing home board, had known the testatrix since 1952. He testified she was competent in 1975. A banker, who handled testatrix's business, had known her since 1960. He testified, "I think she knew precisely what assets she had and there is no doubt in my mind that she knew what she was doing." In his deposition, Dr. Brownsberger said the guardianship was instituted primarily because of testatrix's physical inability to get around to attend to business. He explained the various entries in the medical records. He testified testatrix was fully competent in December, 1975. In the proponent's prima facie case, the administrator of the nursing home had testified the testatrix was competent. The attorney who drew the will in question said, "I—she was mentally competent when she made the will, she knew exactly what she was doing, she knew what property she had, she knew who she wanted to get it." The contestant offered no rebuttal.

The contestant's first point is that the trial court erred in directing a verdict for the proponent on the issue of undue influence because the court erroneously applied the law in ruling that "there was no evidence presented by the plaintiff on the issue of undue influence by the beneficiary" or that she actively procured the making of the will. To support that point the contestant first cites the following language from *Matthews v. Turner,* 581 S.W.2d 466 (Mo.App.1979): "A presumption of undue influence arises if a confidential or fiduciary relationship existed between the testatrix and the beneficiary, if the beneficiary has been given a substantial benefit by the will and if the beneficiary caused or assisted in causing execution of the will." He then states, "The court hung its decision on the third requirement—that the beneficiary cause or assist in causing the execution of the will." He then cites the following: "[A]ctive procurement in the execution of a will may be inferred from the power of the fiduciary to influence the maker of a will, the opportunity to do so, the unnatural disposition of the property, and the change from the prior disposition." *Disbrow v. Boehmer,* 711 S.W.2d 917, 926 (Mo.App.1986). He concludes by arguing that by reason of *Disbrow* the evidence established a presumption of undue influence and because of that presumption the trial court erred in finding against him on the issue of undue influence.

It must be noted the contestant's argument misstates the record. As previously stated, in sustaining the proponent's oral motion for a directed verdict at the close of the contestant's evidence, the trial court said, "I think the court is going to sustain the motion for directed verdict on behalf of the defendant as to the—any proof of any fraud or anything." The formal judgment entry reads: "The court at that time found there was no evidence presented by the plaintiff on the issue of undue influence by the beneficiary and directed the verdict for the defendants on that issue." That finding was not directed to the third requirement, but was a general finding the contestant did not present evidence which would support a determination of undue influence.

More importantly, the contestant's argument is apparently founded upon the erroneous assumption that if the evidence raises a presumption of undue influence, the court must find against the will. It is true that "[w]hen supported by substantial evidence, the presumption makes a prima facie case which does not disappear upon

the introduction of rebutting testimony but presents an issue for the jury." *Hodges v. Hodges,* 692 S.W.2d 361, 367 (Mo.App. 1985). Nevertheless, the presumption does not compel a determination of undue influence and the trier of fact may yet find that a will is not the product of undue influence. *Goodnight v. Curry,* 618 S.W.2d 278 (Mo. App.1981). A corollary proposition is that "the existence of a presumption is not essential to a submissible case if the circumstantial evidence is otherwise sufficient to permit a reasonable inference of undue influence." *Matthews,* at 472.

■ The contestant's argument is flawed for two reasons. The evidence does not raise a presumption of undue influence and the evidence would not support a determination of undue influence. There was no evidence that Charlene Kenney participated in any manner in the preparation or execution of the will within the meaning of the rule cited from *Matthews. Disbrow* is not authority that the evidence established a presumption of undue influence by proponent. In *Disbrow* there was an abundance of evidence the beneficiary was extremely active in the preparation and execution of the will in question. The appellate court summarized that he made "all the arrangements for the testatrix to change her will." *Disbrow,* at 926. The cited quotation properly refers to factors to be considered in determining if a will is the product of undue influence. It does not stand for the proposition that a presumption may be based upon an inference.

■ Even though not raised by the contestant, the court must note the irregular procedure followed by the trial court in this case. Rule 67.02 in part provides: "After the plaintiff has completed presentation of his evidence, the defendant may by motion move for a dismissal on the grounds that upon the facts and the law plaintiff is not entitled to relief." The rule is applicable to court-tried cases. *Rigg v. Hart,* 255 S.W. 2d 778 (Mo.1953). However, a motion for a directed verdict is inappropriate in a court-tried case. *Board of Public Utilities v. Fenton,* 669 S.W.2d 612 (Mo.App.1984). A motion for a directed verdict in a court-tried case is properly regarded as a motion to dismiss under Rule 67.02. *Marrs v. Marrs,* 628 S.W.2d 950 (Mo.App.1982); *Cave v. Cave,* 593 S.W.2d 592 (Mo.App. 1979); *Moser v. Williams,* 443 S.W.2d 212 (Mo.App.1969).

Rule 67.02 does not by its terms authorize the dismissal of one of two issues pleaded in the same count as the basis for a cause of action. In this case, this court need not determine if it is proper to withdraw such an issue if, at the close of his case, the party bearing the burden of proof on such an issue has failed to present sufficient evidence to submit or prevail on that issue. See *Simmons v. Inman,* 471 S.W. 2d 203 (Mo.1971); *Kinsella v. Gibson,* 307 S.W.2d 491 (Mo.1957); Annot., Prima Facie Case—Dismissal, 55 A.L.R.3d 272 (1974). The contestant did not in the trial court complain of the procedure employed. He does not on appeal complain of that procedure. Further, contestant did not offer any additional evidence in the trial court upon the issue of undue influence after resting his case. Cf. *General Motors Acceptance Corp. v. Dieckmann,* 675 S.W.2d 469 (Mo.App.1984); *International Harvester Credit Corp. v. Formento,* 593 S.W. 2d 576 (Mo.App.1979).

■ "It is impossible to set forth a rigid formula of what facts must be established to make a submissible case of undue influence by circumstantial evidence." *Matthews,* at 472. Relevant factors are discussed in *Matthews* and *Kaiser v. Pearl,* 670 S.W.2d 915 (Mo.App.1984). It is not necessary to review all of the evidence in this case. It is sufficient to observe there was undisputed evidence the testatrix was a strong-willed person and there was no evidence of any activity in respect to the preparation and execution of the will by Charlene Kenney, whom the testatrix had regarded as her nearest relative for 16 years. "[T]he law does not ban as undue the natural influence of affection or attachment or the desire to gratify the wishes of one beloved or trusted by the testatrix." *Kaiser,* at 919. "The burden of proving undue influence rests upon the contestants." *Hodges,* at 366. The judgment of

the trial court that the contestant did not establish undue influence is supported by the evidence. Cf. *Maurath v. Sickles,* 586 S.W.2d 723 (Mo.App.1979); *Metter v. Janssen,* 498 S.W.2d 581 (Mo.App.1973), *cert. denied,* 414 U.S. 1115, 94 S.Ct. 848, 38 L.Ed.2d 742 (1973). The contestant's first point has no merit.

At the conclusion of all the evidence, the trial court took the case under advisement. The judgment subsequently entered includes a finding "the Plaintiff failed to produce any substantial evidence showing the testatrix, Alixe Dickson, did not have the mental capacity to make a Will on the 16th day of December, 1975." The contestant relies upon this recital to establish his second point which is that the trial court erred by taking the position the burden was upon the contestant to establish lack of testamentary capacity.

It is true the burden is upon a proponent to prove the testamentary capacity of a testatrix or a testator. *Brug v. Manufacturers Bank & Trust Company,* 461 S.W.2d 269 (Mo. banc 1970). "This burden never shifts ..., although, after proponents have made a prima facie case, contestants must come forward with substantial evidence that the testator lacked the mental capacity to execute the will if they are to prevail." *Keifer v. St. Jude's Children's Research Hosp.,* 654 S.W.2d 236, 237 (Mo. App.1983) (citation omitted). Also see *Lewis v. McCullough,* 413 S.W.2d 499 (Mo. 1967). The proponent clearly made a prima facie case of due execution and testamentary capacity. It is apparent the judgment entry refers to the failure of the contestant to come forward with substantial evidence of testamentary incapacity as required by the rule restated in *Keifer.* While more appropriate language could have been used, the judgment is a determination the proponent carried her burden of proof to establish that Alixe Dickson had testamentary capacity on December 16, 1975.

The contestant's third point is that the determination of the trial court that Alixe Dickson had testamentary capacity on that date is against the weight of the evidence. The judgment of the trial court is to be reviewed under the well-known standards of *Murphy v. Carron,* 536 S.W. 2d 30 (Mo. banc 1976). To support this point, the contestant relies upon entries in the testatrix's medical records, such as organic brain damage-congenital, organic brain syndrome, senility, a confused condition and upon the appointment of a guardian of her estate seven months after the will was made. He also emphasizes the opinion of Dr. Thies.

This point does not merit an extended discussion. Eccentricities and an organic brain syndrome or senility do not establish the absence of testamentary capacity. *Lewis v. McCullough,* supra.

> '[M]ere proof of illnesses, or imperfect memory, or forgetfulness of names and persons, or old age with its attendant physical and intellectual weaknesses, or mental confusion, or arteriosclerosis, either singly or in combination, unless it further appears that grantor did not understand the nature of the instant transactions, and did not with such understanding voluntarily enter into and consummate the transactions, are insufficient to invalidate these deeds.'

*Vineyard v. Vineyard,* 409 S.W.2d 712, 717 (Mo.1966). Further, the subsequent appointment of a guardian of her estate does not establish testamentary incapacity. 79 Am.Jur.2d Wills § 58 (1975). The opinion of Dr. Thies cannot weigh heavily in the determination of testamentary capacity. He granted deference to the opinion of Dr. Reed, who found the testatrix to be competent. A review of the testimony of Dr. Brownsberger and the five witnesses presented by the proponent makes it apparent a determination of testamentary capacity is supported by substantial evidence. Indeed, a determination of testamentary incapacity would have been against the weight of the evidence. The contestant's third point is denied and the judgment is affirmed.

PREWITT, P.J., and HOGAN and FLANIGAN, JJ., concur.