Argued and submitted December 21, 1990, remanded for reconsideration of award of
attorney fees; otherwise affirmed August 28, 1991

Gordon T. O'BRIEN,
Special Administrator of
the Estate of Helen E. O'Brien,
*Appellant,*

*v.*

Ronnie BELSMA,
*Respondent.*

(CV 87-981; CA A61655)

816 P2d 665

Don G. Carter, Portland, argued the cause for appellant. With him on the briefs was McEwen, Gisvold, Rankin & Stewart, Portland.

Thomas W. Sondag, Portland, argued the cause for respondent. With him on the brief was Lane Powell Spears Lubersky, Portland.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

JOSEPH, C. J.

---

* Joseph, C. J., *vice* Newman, J.

## JOSEPH, C. J.

Plaintiff, on behalf of the estate of Helen O'Brien, brought this action to rescind and cancel deeds and to require the return of funds that Helen had given to defendant when Helen was allegedly incompetent. The court dismissed the action with prejudice and awarded defendant attorney fees, costs and disbursements. Plaintiff appeals. On *de novo* review, we affirm the dismissal but reverse and remand with respect to the award of attorney fees.

Helen and plaintiff were married for 35 years. Defendant is Helen's daughter by a previous marriage. She had never been regularly employed, and Helen did not want her to work. Helen supported her with varying monthly amounts when defendant was in college. Helen kept a safety deposit box jointly with defendant, in which she kept her will and certificates of deposit issued jointly to both of them. Over the years, Helen had made defendant joint owner of certificates of deposit and bank accounts worth in excess of $150,000.

Helen intended to provide for defendant's future livelihood as well. Between 1979 and 1986, she executed three wills, under which her daughter was to receive Helen's separately held land and certain bank accounts. In 1986, Helen began to experience heart palpitations and memory loss. She became concerned about guaranteeing her daughter's welfare and transferred two parcels of land and two certificates of deposit to her between January and September, 1987.

Helen had inherited one of the parcels, the "wheatland property," from her mother. It consists of about 240 acres of farmland that had been in Helen's family for generations. She maintained it as separate property and had always made it known that defendant would inherit it. Helen conveyed the land to defendant on September 18, 1987.

The other parcel is about 3,895 acres of mountain pasture, the "mountain property," which Helen purchased with her own funds on a contract in 1985. The contract allowed Helen to take immediate possession of the property but provided that it would be conveyed in tax lots under a formula as she made payments. When Helen first contracted to purchase the property, she conveyed 40 acres to defendant and told her that the rest would be deeded to her eventually.

On January 29 and June 23, 1987, she executed deeds transferring 1,507.46 acres of the mountain property to defendant. On July 7, 1987, with the sellers' approval, she assigned defendant all of her rights under the sales contract and executed a bargain and sale deed conveying the rest of the property, subject to the terms of the contract, including the outstanding balance of $63,384.27.

Sometime after September 4, 1987, Helen authorized defendant to take two certificates of deposit, totaling $26,000, from their joint safety deposit box. They had originally been issued in both their names.

■ Plaintiff first assigns as error that the court determined that Helen was competent when she gave the deeds and the certificates of deposit to defendant. The test for competence to convey property is whether, at the time of the conveyance, the grantor had the " 'ability to understand the nature and effect of the act in which [she] is engaged and the business which [she] is transacting.' " *Ryan v. Colombo,* 77 Or App 71, 76, 712 P2d 139 (1985) (quoting *First Christian Church v. McReynolds,* 194 Or 68, 72, 241 P2d 135 (1952)).

Five experts testified. In early 1987, Helen consulted Dr. Dine, a Portland neurologist, who found her to be mentally competent. She saw him again on September 22, 1987, when he concluded that her memory had deteriorated and that she was showing symptoms of senility or a similar condition. He declined at trial to express an opinion about Helen's competence when she transferred the property.

On September 22, Helen also saw Dr. Reiter, a psychologist who specializes in Alzheimer's Disease. She told the doctor that she feared the disease, and he administered a battery of tests. He testified that Helen appeared normal, but her test results showed her to have a serious cognitive deficit. Her IQ was 66, which put her in the retarded or mentally defective range. He testified that he did not believe that she was competent on the day that he examined her or for three months before then. Dr. Duncan, defendant's psychiatrist, saw Helen on September 24, 1987, because defendant was concerned about her mother's memory problems. He concluded that Helen suffered from a moderate dementia but refused to express an opinion at trial about her competence.

By December, 1987, Helen was paranoid, confused and disorganized. Dr. Larsen, a member of the neurogeriatric psychiatric program at Woodland Park Hospital in Portland, evaluated her in July, 1988. He testified that he has evaluated well over 2,000 Alzheimer's Disease patients. He found her to be suffering from presenile dementia,

> "one of those categories that are characterized by marked dysfunction, best described as stage two or stage three Alzheimer's, in which she was — displayed rather marked judgment disorientation, confusion and at that point in my opinion was markedly impaired."

At that time, according to Larsen, Helen would not have been competent to convey or devise property.

■ Larsen reviewed Helen's medical records and watched a videotape that defendant and a friend had made of Helen during the course of 1987. He concluded that, during the relevant time in 1987, Helen was in the first stage of Alzheimer's Disease, which has three stages. Stage 1 is characterized by short-term memory loss, stage 2 by disorganized thought, confusion and inability to recognize friends and relatives, and stage 3 by significant impairment of language ability and judgment and ultimately by death. It is common, Larsen said, for a person in stage 1 to have good days and bad days; the disease does not follow a linear progression in its early phase. A person in stage 1 also commonly exhibits stage 2 symptoms for short periods. He indicated that the tests that Reiter had administered were not determinative of Helen's understanding of her actions. He said that Alzheimer's Disease patients commonly have difficulty with new learning, which many of the tests involved, and their mental performance deteriorates under stress. He concluded that, through September, 1987, Helen was in stage 1 and was competent, at least intermittently, to sign a deed to transfer property.[1]

Larsen's assessment of Helen's condition helps to explain the conflicting testimony of the 36 lay witnesses.

---

[1] Dr. Trudel, a psychiatrist, evaluated Helen shortly before the trial in March, 1989. She was incontestably incompetent at that time. He assumed that she had been incompetent throughout 1987 on the basis of the other doctors' reports and of Gordon's descriptions of her behavior. All the other medical experts agreed that Helen was competent in January, 1987; only one ventured an opinion that she was not competent in September, 1987.

Some of the witnesses described memory lapses and confused behavior, and others described a normally functioning individual. With one exception, however, the witnesses who described Helen's behavior when she was planning and making the transfers describe her as competent. A witness testified to her normal behavior on September 18, 1987, the day on which she signed the last deed to defendant. The attorney who met with her about her estate plan in June, 1987, testified that she was lively and had engaged in an active discussion about alternatives to probate for her estate. He said that she did not appear confused and seemed to understand the effects of what she was doing. The witnesses who notarized her signatures on the various deeds in January, June and September concurred.

Helen's accountant testified that he did not believe that she was competent to conduct ordinary business in 1987. An audio tape of a conversation between the accountant and defendant in late June, 1987, however, contains the accountant's statement that Helen understood completely the nature and effect of the deeds that she planned to execute. Other evidence also supports the conclusion that Helen was competent when she transferred the property and money to her daughter. She had always kept the property that she transferred as separate property and had held funds jointly with her daughter. She was carrying out a plan of property distribution that she had made as early as 1979, when she executed her first will. We conclude that plaintiff did not sustain his burden of proving that Helen was incompetent when she transferred the property. *See Ryan v. Colombo, supra.*

Plaintiff's second and third assignments of error are that the court assigned him the burden of proving undue influence and that the court concluded that Helen's deeds of property and gifts of money were not induced by the exercise of undue influence. The court correctly assigned the burden of proof to plaintiff. *See In re Lobb's Will,* 173 Or 414, 431, 145 P2d 808 (1944). The party asserting undue influence must establish that a confidential relationship exists between a grantor and a grantee, that the grantee has a position of dominance over the grantor and that suspicious circumstances exist. If the evidence is sufficient to prove those facts,

the burden to *produce* countervailing evidence shifts to the party resisting the claim to overcome a presumption of undue influence. *See Ryan v. Colombo, supra,* 77 Or App at 77.

■    The presumption of undue influence never arose here. Plaintiff proved a confidential relationship between Helen and defendant but did not prove that defendant was dominant over Helen or that there were suspicious circumstances surrounding the transfers. The evidence was overwhelming that defendant was not only *not* dominant over her mother but that she was subservient to her mother, that Helen alone arranged the transfers and that in doing so she was merely continuing a long-term pattern of supporting her daughter.

As to suspicious circumstances, *In re Reddaway's Estate,* 214 Or 410, 329 P2d 886 (1958), lists seven factors that may signal the presence of suspicious circumstances. 214 Or at 421. Only two need concern us: whether there was a change in the grantor's attitude toward those for whom she had previously expressed affection and the grantor's susceptibility to influence. Helen had always intended that the property at issue pass to defendant. The fact that she conveyed it rather than devised it shows only a change in her timing choices, not in her attitude. Helen intended to benefit defendant by her will originally. In 1986, she decided instead to make a gift of the property, when she clearly was competent. There is no evidence that she was susceptible to her daughter's influence in carrying out her plan. The court correctly ruled that defendant did not exercise undue influence to obtain the deeds or the money in their joint names.

■    Plaintiff's final assignment of error is that the court should not have awarded defendant her attorney fees incurred in opposing plaintiff's motion to reopen the case. Plaintiff moved to reopen to record an objection to the receipt in evidence of defendant's videotape of her mother and of certain audio tapes of telephone conversations between Helen and defendant. Plaintiff's counsel did not object when those exhibits were offered at trial, and the court found no basis to reopen the case. The court did not specify the basis for awarding the fees, and we, therefore, must remand with instructions that the court specify the basis for its award and

conduct any further proceedings necessary for that determination.

Remanded for reconsideration of award of attorney fees; otherwise affirmed.