**Claudine L. BOYCE, also known as Marilyn Boyce, Plaintiff–Appellant,**

v.

**Vera FERNANDES and City of Peoria, Illinois, Defendants–Appellees.**

No. 95–2610.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1996.

Decided Feb. 26, 1996.

Richard L. Steagall (argued), John P. Nicoara, Nicoara & Steagall, Peoria, IL, Robert B. Becker, Becker & Becker, Peoria, IL, for Plaintiff–Appellant.

Clifton J. Mitchell (argued), Peoria, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and CUDAHY and FLAUM, Circuit Judges.

POSNER, Chief Judge.

Claudine Boyce appeals from the dismissal, on summary judgment, of a damages suit for false arrest that she brought against Vera Fernandes, a Peoria police officer, and the City of Peoria. The suit against Fernandes is based exclusively on 42 U.S.C. § 1983 and was dismissed on the ground of public officers' immunity. A supplemental state law claim naming both Fernandes and the City as defendants was also dismissed.

■ Where the only issue bearing on immunity is whether the defendant had probable cause to make the search or arrest that is challenged, merits and immunity merge; the dispositive question is simply whether the defendant did have probable cause. So at least we held in *Mahoney v. Kesery*, 976 F.2d 1054, 1057–58 (7th Cir.1992), and implied in *Maxwell v. City of Indianapolis*, 998 F.2d 431, 435–36 (7th Cir.1993). But *Maltby v. Winston*, 36 F.3d 548, 554–55 and n. 7 (7th Cir.1994), suggests, in great tension with these decisions and in reliance on dicta in *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (per curiam); *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), and *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir.1988) (all cases discussed, however, in *Mahoney*, 976 F.2d at 1059), that the immunity doctrine may give public officers an additional layer of protection beyond what is implicit in the right to arrest on probable cause that may well turn out to be mistaken. This is a surprising suggestion. The modern conception of public officers' immunity is that it is designed to protect public officers from their failures to anticipate changes in the law, *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Jones v. City of Chicago, supra*, 856 F.2d at 994, and the concept of probable cause has not changed in a great many years. In addition, we suspect that the additional layer of protection implied by the concept of probable cause to believe one has probable cause to arrest or search someone may have a merely metaphysical or conceptual existence; human ability to make fine distinctions is limited. But we need not attempt to sort out the tangle in this case—and indeed if we are right about the merely conceptual significance of the additional layer the tangle may never have to be sorted out because no case may ever turn on its untangling. It is apparent that Fernandes had probable cause to make the arrest, and this makes the issue of immunity academic.

■ Elder abuse is a growing problem in this country because of the growing number of elderly people. Like child abuse, elder abuse is a difficult crime to detect and prosecute. In both types of case the victim is often an unreliable witness because of limited mental capacity—undeveloped in the case of the child, impaired by old age in the case of the elder. Claudine Boyce was employed by a woman of 75 named Auda Tunis who was afflicted by senile dementia caused either by alcoholism or by Parkinson's disease. Detective Fernandes began her investigation of Boyce at the instance of Tunis's granddaughter, who told the detective that she thought Boyce might be stealing from her grandmother. The granddaughter had discovered that all the furniture had been removed from Tunis's home and that she had been placed in a nursing home. The granddaughter had visited her grandmother in the nursing home and found that she seemed confused at first but later recognized the granddaughter and the granddaughter's husband. Tunis told them she did not know why she was there, that Boyce had badgered her into signing what she thought was a document that said merely that she would think about signing a power of attorney, and that she was ashamed of the situation she was in and had not wanted to complain to the granddaughter.

The nursing home had told the granddaughter that Tunis had granted Boyce (who had signed Tunis into the nursing home) both a general power of attorney and a health-care power of attorney. Detective Fernandes therefore called the lawyer who had prepared the powers of attorney. He expressed surprise that Tunis had a granddaughter—he had thought she had no living relatives. Fernandes interviewed employees of the nursing home. They told her that Tunis had been in a shocking condition when

admitted to the home, with multiple bruises and lacerations, and that the jewelry Tunis had worn on her previous admission to the nursing home was gone. Fernandes reported that the staff had told her that "Tunis seemed to be in a state of shock and her condition was completely opposite of the first time she had been admitted to the home several weeks prior. She now appeared confused and withdrawn and her clothing was unkempt and old appearing." The staff suspected elder abuse and decided to institute proceedings to obtain a new power of attorney, in which the nursing home would be the power holder.

Fernandes then spoke to Tunis herself, who in this interview and a subsequent one on December 26 told Fernandes that Boyce had threatened, slapped, and shoved her, had plied her with liquor, and might have (subsequent investigation revealed that she had) deposited her social security checks, without her authorization, in a joint checking account in Boyce's and her name; and that Boyce had taken Tunis's furniture and other personal property without her authorization and Tunis did not know what she had done with it. Two days later, December 28, Fernandes learned that Tunis's Cadillac was parked in Boyce's driveway and that the car, formerly registered to Tunis's deceased husband, was now registered to Boyce. A few days later Fernandes arrested Boyce, without a warrant, for the theft of the Cadillac, a felony. Boyce was held in the county jail for 42 hours before being released on bond. Subsequent investigation brought to light that Boyce had in all likelihood forged a bill of sale of the Cadillac to herself for $100. Nevertheless, she has not been prosecuted.

Accusations by demented persons must always be viewed with a certain skepticism, especially since paranoid suspicions are a common incident of dementia. It would have been imprudent for the detective to have reposed automatic, unquestioning credence in Tunis's accusations against Boyce. She did not. Tunis's accusations were corroborated by the granddaughter, by the staff of the nursing home, and by the lawyer, who was upset to learn that Tunis had granted a power of attorney to her housekeeper when (as Boyce well knew) she had an adult granddaughter. Further corroboration came from the fact that Boyce, though knowing of Tunis's granddaughter, had never informed her that Boyce had a power of attorney, that she was managing Tunis's affairs, and that she was preparing Tunis's property for sale. There thus were grounds for suspicion that Boyce was trying to conceal what she was doing from Tunis's only relative. ·

Tunis's accusations themselves, moreover, had a degree of particularity that reduced the likelihood that they were merely senile fantasies. It is a common mistake to exaggerate the degree to which senile dementia renders an individual mentally incompetent. There are different types and severities of dementia. The most serious—senile dementia of the Alzheimer's type—is progressive. Some persons afflicted with it exhibit only short-term memory loss and occasional disorientation, while others are so far demented as to have forgotten their own name, to have lost the power of speech, and to be unable to recognize their spouse or their children. See generally Fred Plum, "Dementia," in 1 *Encyclopedia of Neuroscience* 309 (George Adelman ed. 1987). A further complication is that, until the terminal stage that we have just described is reached, the severity of the dementia varies from day to day, even from hour to hour. Mrs. Tunis apparently had good days and bad days. The second interview with Fernandes evidently took place on a good day, because she spoke coherently and precisely, exhibiting a good memory, and nothing she said was bizarre or seemed delusional. Contract law, property law, and criminal law alike have rejected a per se rule that demented persons are legally incompetent. See, e.g., *United States v. Rainone,* 32 F.3d 1203, 1208 (7th Cir.1994); *In re Estate of Peterson,* 77 Nev. 87, 360 P.2d 259, 267 (1961); *In re Will of Wicker,* 15 Wis.2d 86, 112 N.W.2d 137, 139 (1961); *O'Brien v. Belsma,* 108 Or.App. 500, 816 P.2d 665 (1991); *Feiden v. Feiden,* 151 A.D.2d 889, 542 N.Y.S.2d 860, 862 (1989); *Weir by Gasper v. Ciao,* 364 Pa.Super. 490, 528 A.2d 616 (1987); *Wright v. Kenney,* 746 S.W.2d 626, 631 (Mo. App.1988). We do not think there should be a different rule for witnesses.

 To all this Boyce replies that she had a power of attorney and thus was authorized to take and sell Tunis's personal property. She says that she had stored the furni-

ture in her own garage in preparation for sale, and that if she sold the Cadillac to herself at its market value and gave the proceeds to Tunis she was doing nothing more than transforming Tunis's property into a more convenient form. She adds that if the power of attorney was invalid because Tunis was incompetent at the time she signed it, or even if it was abused, these things would not in themselves convict the power holder of theft in exercising it. And this of course is true. But this is just to say that Fernandes did not have conclusive proof of the theft of the Cadillac. She had a strong, reasonably grounded suspicion and that is all that is required for probable cause. The intimation that a power of attorney immunizes the power holder from a charge of conversion is nonsense. The power creates a fiduciary relation, *In re Estate of Rybolt*, 258 Ill.App.3d 886, 197 Ill.Dec. 570, 573, 631 N.E.2d 792, 795 (1994), and thus an opportunity for abuse by the power holder that is at best tortious and at worst criminal. We were disturbed by the insistence by Boyce's lawyer at argument that the power holder is authorized to convert to her own use any of the grantor's property that has no market value. Although market value is relevant to the gravity of a theft and therefore the length of the thief's sentence, the theft of an item that has no market value is still theft, *Hessel v. O'Hearn*, 977 F.2d 299, 303 (7th Cir.1992), and neither explicitly nor implicitly does a power of attorney authorize the power holder to steal from his grantor. *In re Estate of Rybolt, supra*, 197 Ill.Dec. at 573, 631 N.E.2d at 795; *People v. Wright*, 239 Ill. App.3d 738, 180 Ill.Dec. 461, 607 N.E.2d 355 (1993); *Walch v. State*, 112 Nev. 25, 909 P.2d 1184 (1996); *Dayton Bar Ass'n v. Gross*, 62 Ohio St.3d 224, 581 N.E.2d 520 (1991), reinstated, 73 Ohio St.3d 1201, 651 N.E.2d 1298 (1995); *State v. Hunt*, 75 Wash.App. 795, 880 P.2d 96 (1994). Indeed, the breach of a fiduciary obligation to an elderly person is explicitly a crime in Illinois. 720 ILCS 5/16–1.3(a), (c). No doubt this sort of thing is common, which may be why the legislature decided to single it out for specific prohibition, but crime does not become legal by being widespread.

■ The lawyer also disparaged the evidence of physical abuse on the ground that his client had not been arrested for such abuse. But the evidence of abuse, like the evidence of the unexplained disappearance of the jewelry and Boyce's failure to disclose to the lawyer that Mrs. Tunis had an adult granddaughter, cast light on Boyce's probable intentions in registering the Cadillac in her own name. The facts turned up in the investigation that preceded her arrest, when they are taken as a whole, would have indicated to a reasonable police officer that Boyce was trying to despoil a vulnerable old woman. The protection of the vulnerable is a noble duty of government. Fernandes is rather to be commended for the speed and thoroughness of her investigation than condemned for having acted before she had assembled conclusive proof of criminal misconduct. The fact that in the end Boyce was not prosecuted does not establish the absence of probable cause, and not only because the legal standard and the evidentiary requirements for probable cause are more stringent at the preliminary hearing than at the arrest stage, the point emphasized in *Williams v. Kobel*, 789 F.2d 463, 469 (7th Cir.1986). The majority of lawfully arrested persons are not prosecuted. Prosecutors' time and other resources are severely limited in relation to the amount of crime in this country, and prosecution may be declined merely because the evidence of guilt is not overwhelming. The State's Attorney may have believed this to be such a case or may have thought that Boyce's arrest would suffice to deter her and perhaps other caretakers of the elderly from abusing their positions. Boyce is herself an elderly woman and prosecuting her for elder abuse might strike a jury as an uncomfortable irony.

■ It is unfortunate that Boyce, herself a woman of 63 when arrested, was kept in jail for 42 hours. Fernandes cannot be criticized for this sequel to the arrest, however, for she was required to hand Boyce over to the sheriff, and he administers the county jail. Given the overcrowding of American jails, we venture to suggest that a practice of automatic incarceration of all arrested persons, regardless of circumstances, is as wasteful as it is uncivilized. Which is not to say that it entitles the plaintiff to any relief—and certainly not against Detective Fernandes.

We turn last and briefly to the supplemental claim, a claim for false arrest under state law that was dismissed, on the merits, on the ground that Fernandes had not acted willfully and wantonly. 745 ILCS 10/2-202. The normal practice of course is to relinquish jurisdiction over a supplemental claim when the main claim is dismissed before trial, but if the supplemental claim is easily shown to have no possible merit, dismissing it on the merits is a time saver for everybody. *Korzen v. Local Union 705*, 75 F.3d 285, 288–89 (7th Cir.1996). That is the case here. The same evidence that shows beyond any possibility of doubt that Fernandes acted reasonably in arresting Boyce shows that the arrest was not willful and wanton. True, the precise force of the term "willful and wanton" in the law of Illinois is unclear. It may be little stronger than negligence. *Davis v. United States*, 716 F.2d 418, 425–26 (7th Cir.1983). But there is no evidence even of negligence here. See *Gordon v. Degelmann*, 29 F.3d 295, 299 (7th Cir. 1994), applying the Illinois public officers' tort immunity statute in a false arrest case such as this. The state law claim against the City, which is based on respondeat superior, falls with the claim against Fernandes.

AFFIRMED.