CAPONE, Umberto

v.

MARINELLI, Detective Robert and Volpe, John, individually and in his official capacity Chief of Police of Plymouth Township, individually and in his official capacity and O'Neill, Corporal Rodney M. and Bambi, William, individually and in his official capacity, Chief of Police of Norristown, individually and in his official capacity

v.

CAPONE, Laura Hargrove.

Appeal of Corporal Rodney M. O'NEILL and Chief William Bambi, Appellants.

No. 88–1539.

United States Court of Appeals, Third Circuit.

Argued Nov. 14, 1988.

Decided Feb. 23, 1989.

M. Kelly Tillery (argued), Francis M. Chmielewski, Leonard, Tillery & Davison, Philadelphia, Pa., for appellants.

Philip L. Blackman (argued), A. Charles Peruto, Peruto, Ryan & Vitullo, Philadelphia, Pa., for appellee Umberto Capone.

Before HIGGINBOTHAM and MANSMANN, Circuit Judges, and DUMBAULD, District Judge.*

OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

The Appellants appeal from the district court's order denying them qualified immunity in a suit brought against them, as well as other defendants, pursuant to the Civil Rights Act of 1871, codified at 42 U.S.C. § 1983 (1982), for unlawful arrest and prosecution. The complaint also included pendent state law tort claims. Because we find that the Appellants reasonably relied upon a bulletin establishing the existence of a warrant for arrest, they are entitled to qualified immunity as a matter of law. Therefore, we will vacate the order of the district court and remand with instructions to enter judgment accordingly.

I.

Officer Robert Marinelli is a member of the police department in Plymouth Township, Pennsylvania. On March 13, 1985, Marinelli swore to an Affidavit of Probable Cause for arrest, based on the following alleged criminal conduct attributed to the Appellee, Umberto Capone. On the morning of March 13, Capone called his former girlfriend, Laura Hargrove,[1] asking wheth-

er he could visit her and their natural child, two-year-old Heather Marie Hargrove. The couple's relationship had ended two months earlier, and Hargrove had taken Heather from Capone's home in Paterson, New Jersey, to live with her parents in Plymouth. Capone met Hargrove and Heather at the Plymouth Mall, and asked that they get into his car. After several hours of driving them around the neighborhood, Capone returned to the Mall. But when Hargrove attempted to leave Capone's car with the child, Capone allegedly stated that it "was his turn with the baby and that if he could not provide a good life for her he would kill her and the[n] himself." Affidavit of Probable Cause, No. 85 C–45 (March 13, 1985), *reprinted in* Appellants' Appendix ("App.") at 262. Capone allegedly then pushed Hargrove out of the car and drove away with Heather.

On that same day, a Magistrate for the County of Montgomery issued a warrant for the arrest of Capone based on Marinelli's affidavit. The warrant accused Capone of committing six crimes: kidnapping, unlawful restraint, false imprisonment, recklessly endangering another person, terroristic threats and disorderly conduct. The details of the outstanding warrant were entered into the National Crime Information Center (NCIC) computer system, which then sent out an electronically transmitted bulletin across the country. The bulletin stated that Capone was wanted by the Plymouth Police Department for kidnapping, unlawful restraint, and false imprisonment; that he was armed with a gun and a knife; that his two-year-old daughter was in the car; that he had no rights to the child; that he was possibly headed to Florida; and that a warrant had been issued for his arrest. *See* NCIC Bulletin, *reprinted in* App. at 267. Thereafter, on March 15, 1985, in reliance upon the bulletin, officer Rodney O'Neill of the police department in Norristown Township, Pennsylvania, ar-

---

* Hon. Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. Since the incident that spawned this present action, Capone and Hargrove have been married.

rested Capone within the jurisdiction of Norristown.

At a subsequent hearing, the kidnapping charge against Capone was dismissed. *Capone v. Roth,* No. 123 (Court of Common Pleas, Montgomery County, April 17, 1985), *reprinted in* App. at 42. The remaining criminal charges resulted in a *nolle prosequi. Commonwealth of Pennsylvania v. Capone,* No. 1225–85 (Court of Common Pleas, Montgomery County, Aug. 5, 1985), *reprinted in* App. at 352. Thereafter, Capone brought this suit under § 1983 against officers Marinelli and O'Neill, and their respective supervisors, police chiefs John Volpe and William Bambi. The complaint alleged violations of Capone's constitutional rights on grounds that there was no probable cause for his arrest and prosecution. In addition, he asserted related state law tort claims under pendent claim jurisdiction.

■ The defendants then filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a cause of action. The district court granted the motion with respect to the related state claims that were predicated on a theory of negligence, but denied it with respect to the § 1983 claims and the state claims based on intentional misconduct. *Capone v. Marinelli,* No. 87–0681 (E.D.Pa. June 22, 1987) [1987 WL 12784] (order granting, in part, and denying, in part, motion for dismissal), *reprinted in* App. at 31. Following the completion of discovery, O'Neill and Bambi filed a motion for summary judgment on the basis that, as a matter of law, they were entitled to qualified immunity. The district court denied their motion without opinion,[2] *Capone v. Marinelli,* No. 87–0681 (E.D.Pa.

June 15, 1988) (order denying motion for summary judgment), and from that order this appeal was taken.[3]

## II.

■ The dispositive issue in this appeal is whether a police officer who reasonably relies upon a bulletin that establishes the existence of a warrant for arrest is entitled to qualified immunity in a civil rights action brought against him for unlawful arrest and prosecution.[4]

The doctrine of qualified immunity shields "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The issue of an official's objective good faith is purely a legal question, and the Court admonished that "[r]eliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Id* (footnote omitted).

In this case, the district court erred by not focusing on the "clearly established law" before denying the motion for summary judgment. Upon our review of the relevant case law, we find that the Supreme Court has twice addressed the issue of whether police officers can reasonably rely upon bulletins from other police departments in carrying out their law en-

---

2. The district court's order denied O'Neill, Bambi, Marinelli and Volpe their motions for summary judgment. O'Neill and Bambi, however, are the only defendants who have challenged the court's order. Therefore, this appeal concerns only their asserted claim to qualified immunity.

3. Although the district court's order is not a final judgment, the order in question denying O'Neill and Bambi qualified immunity is directly appealable under the collateral order doctrine. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Our

standard of review is plenary. *Lee v. Mihalich,* 847 F.2d 66, 67 (3d Cir.1988).

4. O'Neill and Bambi also contend that the law of the Commonwealth of Pennsylvania does not preclude parents from being arrested for kidnapping their own children, and thus they are entitled to qualified immunity because probable cause supports the underlying warrant that O'Neill relied upon. We need not decide that issue since the disposition of the instant matter can be accomplished on more limited grounds.

forcement duties. Both of the Court's decisions support our holding that the district court should have granted summary judgment in favor of O'Neill and Bambi.

In *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), a county sheriff in Wyoming issued a bulletin through a statewide law enforcement radio dispatch for police to arrest a person suspected of burglary. The bulletin, at least in the first instance, explained that a warrant for arrest had been issued. *Id.* at 564 & n. 5, 91 S.Ct. 1031, 1035 & n. 5. Relying on the radio message, the police in Laramie arrested the suspect. The Court held that because the sheriff had lacked probable cause for the warrant, the evidence obtained incident to arrest had to be excluded. Significantly, however, the Court noted:

> We do not, of course, question that the Laramie police were *entitled* to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are *entitled* to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause.

*Id.* at 568, 91 S.Ct. at 1037 (emphasis added).

The Court clarified the import of the above language in *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). In *Hensley*, the police in St. Bernard, Ohio, had issued a flyer stating that Hensley was wanted for investigation of an aggravated robbery. Pursuant to the "wanted flyer," police officers in Covington, Kentucky, stopped Hensley, and upon seeing a handgun in plain view, arrested him for weapons possession. The Court of Appeals for the Sixth Circuit had held that because the flyer did not state any of the specific details that led the St. Bernard police to issue the flyer, the Covington police "lacked a reasonable suspicion suffi-

cient to justify an investigative stop." *Id.* at 225, 105 S.Ct. at 678. The Supreme Court reversed that decision and "conclude[d] that, if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop...." *Id.* at 232, 105 S.Ct. at 682.

With respect to the issue of liability, the Court explicitly noted that even

> [i]f the flyer has been issued in the absence of a reasonable suspicion ... *the officers making the stop may have a good-faith defense to any civil suit.... It is the objective reading of the flyer or bulletin that determines whether other police officers can defensibly act in reliance on it.*"

*Id.* at 232–33, 105 S.Ct. at 682–83 (emphasis added).

In the present case, an objective reading of the bulletin issued by the police in Plymouth supports officer O'Neill's contention that he reasonably relied upon the bulletin in arresting Capone. As described earlier, the NCIC teletype stated that Capone was wanted by the Plymouth Township Police Department for kidnapping, unlawful restraint, and false imprisonment; that he was armed with a gun and a knife; that his two-year-old daughter was in the car; that he had no rights to the child; that he was possibly headed to Florida; and that a warrant had been issued for his arrest. Moreover, the bulletin gave an accurate description of Capone's physical characteristics and the car he was driving, including the license plate number.

■ Given that the NCIC bulletin expressly stated that a warrant existed for the arrest of Capone, as well as the nature of the alleged offenses and the fact that a young child was in possible danger, officer O'Neill's reliance upon the bulletin cannot be said to have been unreasonable.[5] There-

---

5. There was also testimony from Hargrove in her deposition that she had spoken with O'Neill the night before Capone was arrested. *See* App. at 318. Assuming the veracity of Hargrove's testimony, O'Neill's conversation with Hargrove merely corroborated his reasonable belief, based upon the NCIC bulletin, that a warrant existed for Capone's arrest; that Capone had

fore, as a matter of law, the protection of qualified immunity from both § 1983 and state law tort claims [6] extends to O'Neill, as well as to his direct supervisor, police chief Bambi, who had knowledge of Capone's arrest.[7] *Cf. Donta v. Hooper,* 774 F.2d 716, 721 (6th Cir.1985) (officers entitled to qualified immunity in arresting suspect on the basis of a teletype that did not recite the existence of a warrant), *cert. denied* — U.S. ——, 107 S.Ct. 3261, 97 L.Ed.2d 760 (1987); *Taggart v. County of Macomb,* 587 F.Supp. 1080, 1081 (E.D.Mich. 1982) (officers had the right to qualified immunity even though arrest warrant recited in teletype was no longer in effect).

### III.

Accordingly, we will vacate the district court's order denying O'Neill and Bambi summary judgment and remand the case to the district court with directions to enter judgment for O'Neill and Bambi based upon their entitlement to qualified immunity.

committed numerous alleged criminal acts; and that Heather's life was in possible jeopardy.

**6.** Qualified immunity covers civil liability claims brought against police officers under both 42 U.S.C. § 1983 and the common law. *See Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967).

**7.** This Court has held that supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct. *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1082 (3d Cir.1976). In the instant case, the record reflects that O'Neill reported Capone's arrest to Chief Bambi. Therefore, whatever qualified immunity defense that extended to O'Neill also covered Bambi.