**John W. NORTHEN, Plaintiff–Appellant,**

v.

**CITY OF CHICAGO, et al.,
Defendants–Appellees.**

No. 97–1245.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 10, 1997.

Decided Oct. 8, 1997.

Rehearing and Suggestion for Rehearing
En Banc Denied Nov. 4, 1997.

Rick Halprin (argued), Chicago, IL, for Plaintiff–Appellant.

Lawrence Rosenthal, Mardell Nereim (argued), Benna R. Solomon, Eileen B. Libby, Susan S. Sher, Office of the Corporation Counsel, Appeals Division, Chicago, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and MANION and EVANS, Circuit Judges.

POSNER, Chief Judge.

This case follows a common modern pattern. A public employee has a dispute with his employer, and loses his job or suffers some other adverse personnel action. He brings a blunderbuss civil rights case under 42 U.S.C. § 1983 against everyone in sight, seeking improbable millions of dollars in damages ($7 million here). The defendants pick through the lengthy complaint, here in its sixth redaction with 79 paragraphs in 33 pages, hoping the plaintiff has pleaded himself out of court. They move to dismiss under Fed.R.Civ.P. 12(b)(6). The motion is granted, and the appeal follows.

A more focused complaint might have been taken more seriously by the district judge. Most of the charges just don't wash, as a brief summary of the complaint will show. (All the facts in this opinion come from the complaint, which the defendants have not answered, so we do not vouch for their truth.) In 1988, a Chicago police sergeant named John Northen became an outspoken critic of the process by which the police department selected sergeants for promotion to lieutenant. The department retaliated against him with groundless reprimands, suspensions, and the like, in violation of his First Amendment rights. The retaliation induced in him a state of clinical depression, as a result of which he was placed on disability leave in November of 1991. He calls this placement a constructive discharge and another act of retaliation, and complains that he was not offered a termination hearing, but he does not claim that he was actually fit for

duty either in November 1991 or at any time since, and we are told by the City without contradiction that in another lawsuit he has claimed to be disabled from performing police duties. While on disability leave he received half his salary, but we are told, again without contradiction, that his disability benefits expired in November 1996 (after he filed his complaint), forcing him to retire (with what benefits we do not know).

■ So far, Northen has no claim. He did not file this suit until November of 1993, and the statute of limitations for filing a section 1983 suit in Illinois is only two years. *Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir.1996). All the acts of retaliation so far mentioned that undergird his First Amendment claim are time-barred except his being placed on disability leave in November of 1991. But since he himself claims to have been disabled by then, we cannot see how placing him in that status could have been a further act of retaliation. Since by his own account he was incapable of performing the duties of a police officer, the only choice he faced was to be kicked off the force, and have nothing, or be given disability benefits until he retired (or was fit to return to duty), which was plainly a superior alternative. We do not see how it can be an act of retaliation to give someone what he very much wants. *DeGuiseppe v. Village of Bellwood*, 68 F.3d 187, 191 (7th Cir.1995). Retaliation implies harm, however slight, *Bart v. Telford*, 677 F.2d 622 (7th Cir.1982), and benefits are not harms.

■ Yet Northen wanted disability benefits only because of his depression, and he claims—and in the posture of the case we must accept—that he was depressed and hence disabled only because of the earlier violations of his constitutional rights by the defendants (or by some of them). But as we had occasion to reaffirm just the other day, the consequences of an unlawful act do not extend the period within which to sue. *Dasgupta v. University of Wisconsin Board of Regents*, 121 F.3d 1138, 1139–40 (7th Cir. 1997). As for the failure to grant Northen a termination hearing, we cannot imagine what purpose such a hearing would have served. Given his depression—and that *is* a given, for the reason just noted—he *wanted* to be placed on disability leave, and it would have been a disaster for him if as a result of the

hearing he had either been fired or ordered back to work—work that by his own account he was medically unfit to perform.

But there is more to the complaint. Northen alleges that in 1993 he went to a store in DuPage County to buy a gun. He told the salesman that he was a Chicago police sergeant on disability. The salesman replied that Northen would have to produce an official Chicago Police Department identification card. Northen requested the card from the department, but his request was denied. He returned to the store and told the salesman this and the salesman told him to come back the next day to pick up the gun. When he showed up the next day, five of the defendants (all Chicago police officers) were waiting for him. He was arrested, booked at a DuPage County jail, and charged with impersonating a public officer. 720 ILCS 5 32–5. A search of his person at the time of the arrest turned up a gold police badge that his mother had given him; we do not know what the badge said, although the complaint describes it as a "RETIRED" badge. The charges were soon dropped. Northen claims that the arrest violated the Fourth Amendment because it was not based on probable cause.

■ The defendants argue that the complaint—the only source of facts in this case—shows that they had probable cause to believe that Northen had violated the impersonation statute. The argument is nonsense. So far as appears, Northen did not display the "RETIRED" badge to the salesman (and remember that we don't know what the badge says) but merely told him, truthfully, that he was a Chicago police sergeant on disability leave. We do not know why he told him that. Maybe he thought he would get a discount; or maybe he thought he would get the gun quicker. Under Illinois law, police officers are entitled to buy a gun without a waiting period but the rest of us have to wait 72 hours. 720 ILCS 5 24–3(g). (No one, by the way, has remarked the oddity of selling a gun to a person who is clinically depressed, even though many such persons are suicidal. But we cannot find anything in Illinois law to prevent such a sale. See 430 ILCS 65/4(iv), (v); 720

ILCS 5 24–3(e), (f).) Whatever Northen thought or intended, we do not see how a person could be thought guilty of impersonation when he makes a complete and truthful representation of his name and position. Northen was exactly what he told the salesman: a Chicago police sergeant on disability leave.

At argument the defendants' lawyer told us that Northen was trying to obtain an advantage to which he was not entitled. We do not know how she knows that, since it isn't in the complaint and there is no other source of facts of record, but in any event we don't see what it has to do with impersonation. If Judge Doe tells a coffee vendor that he is Judge Doe and wants a free cup of coffee, he is seeking an advantage to which he is not entitled; but, provided he really is Judge Doe, he is not impersonating a public officer or anyone else. *State v. Doss*, 111 Ohio App.3d 63, 675 N.E.2d 854, 858 (1996); *People v. Jones*, 841 P.2d 372 (Colo.App. 1992); cf. *People v. Rinehart*, 81 Ill.App.2d 125, 225 N.E.2d 486, 488–89 (1967).

We have only the complaint to go on. It may be that the defendants possessed facts not narrated in the complaint that gave them grounds for believing that Northen was impersonating a police officer on active duty. Maybe the salesman told them that Northen had done that. Then they would have had probable cause to arrest him. But there is nothing of that in the record.

The defendants argue that even if they lacked probable cause to arrest Northen, they are immune from a suit for damages growing out of the arrest because no court has interpreted the Illinois impersonation statute with reference to the issue of self-impersonation. In arguing this point they express grave concern about decisions of this court that appear, they argue, to "merge" the issue of immunity into the issue of probable cause.

Their concern is misplaced. The decisions in question express doubt that immunity *when conceived as probable cause to believe one has probable cause* is a useful, or even usable, concept. *Boyce v. Fernandes*, 77 F.3d 946, 948 (7th Cir.1996); *Maxwell v. City of Indianapolis*, 998 F.2d 431, 435–36 (7th Cir.1993); *Mahoney v. Kesery*, 976 F.2d 1054, 1057–58 (7th Cir.1992). Under the regime of *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the office of public officers' immunity (not the absolute immunity of judges, prosecutors, and a few other officials but the qualified or good-faith immunity of other public officers, notably police) is to protect public officers against legal uncertainty. *Id.* at 818, 102 S.Ct. at 2738; *Boyce v. Fernandes*, supra, 77 F.3d at 948; *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir.1988). If the legal concept of probable cause has remained unchanged since the arrest and the only issue is whether the defendant had probable cause to arrest this plaintiff in these circumstances, it is difficult to see what purpose would be served by a defense of immunity when conceived as protection against changes or uncertainty in the law; and so the concepts of probable cause and official immunity could be thought in such a case to merge.

Against this conclusion it can be argued, with support from dicta in *Hunter v. Bryant*, 502 U.S. 224, 228–29, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (per curiam), and *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987), and the Fifth Circuit's holding in *Presley v. City of Benbrook*, 4 F.3d 405, 409 (5th Cir. 1993), that the police ought to have a buffer zone protecting them from liability in cases in which a reasonable police officer, unable to predict with exactitude how a magistrate or judge might evaluate the circumstances, could have thought he had probable cause, though the magistrate or judge disagreed. This conclusion is in tension with the holding in *Harlow* that the purpose of official immunity is to protect the official from changes in law (or clarification of previously unsettled law) occurring after he acted. The tension could be lessened by emphasizing the inherent vagueness of the concept of "probable cause," which makes it difficult for a police officer to know, in a close case, whether he has crossed the line.

█ How the merger issue will ultimately be resolved is unclear. One thing that is clear, however, is that there is no merger, even in a search or arrest case, when the meaning of a statute is in issue, or, stated

otherwise, when the question is not whether the police had probable cause to believe that the plaintiff had engaged in conduct X but whether X is a crime under the statute that the police arrested the plaintiff for violating. If the answer to *that* question was unclear when the arrest was made, the police are entitled to their immunity, for it is a pure question of law.

 No doubt there are uncertainties lurking in the impersonation statute, as there are in every statute. But the police cannot obtain immunity for liability for false arrests by arresting people on preposterous charges and then pointing to the absence of any judicial decision that declares the statutory interpretation underlying the charges to be preposterous. Their interpretation must be reasonable in light of existing law. *Scott v. Glumac*, 3 F.3d 163, 166 (7th Cir.1993); *Coleman v. Frantz*, 754 F.2d 719, 728–29 (7th Cir.1985); *Coffman v. Trickey*, 884 F.2d 1057, 1063 (8th Cir.1989). The fact that a statute has not been construed does not mean that there is no law, that anything goes. There is always the statute itself, and if its meaning is clear without benefit of judicial interpretation the officials enforcing it cannot reasonably go against it. *Andreu v. Sapp*, 919 F.2d 637, 643 n. 6 (11th Cir.1990). The clearest violations may never generate an appeal, just because there is no nonfrivolous ground for an appeal; and without an appeal there will be no authoritative judicial interpretation of the statute. It would be a considerable paradox to say that public officers have a license to commit statutory violations so outlandish that they have never been the subject of a published appellate decision.

Suppose that the defendants had arrested Northen for the possession of property given to him by his mother, on the theory that since mothers are notoriously soft-hearted any "gift" from mother to son is actually a theft by the son, and so Northen was guilty of larceny. No reported case interpreting Illinois's larceny statute has ever addressed this imaginative theory. The defendants' theory that you can be guilty as it were of self-impersonation—that is, of representing yourself to be what you actually are—is likewise so imaginative as never to have occurred even to the legal mind and therefore never to have been addressed in a judicial opinion.

 In short, when a proposed statutory interpretation is arguable, the plaintiff cannot rebut the defense of immunity without showing that the argument has been authoritatively resolved, but when the proposed interpretation is cockeyed, no such showing is required. *Andreu v. Sapp, supra,* 919 F.2d at 643; cf. *Scott v. Glumac, supra,* 3 F.3d at 167. The judgment for the defendants involved in the false-arrest claim must therefore be reversed. And it must be reversed not only with respect to that claim, but also with respect to the retaliation claim, since the false arrest is claimed to have been one of the acts of retaliation against Northen for exercising his First Amendment rights—and it is an act that occurred within the limitations period. The dismissal of the state-law claims supplemental to the claims that should not have been dismissed must likewise be reversed, and the case must be remanded for further proceedings. In all other respects the judgment is affirmed; and, since this is a split decision, no costs will be awarded in this court.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.