**Dexter SAFFOLD, Plaintiff,**

v.

**CITY OF CALUMET PARK, ILLINOIS, Officer Joseph Lucente # 508, individually and in his official capacity; Officer John Beckham, individually and in his official capacity; Commander Jeff Kraft, individually and in his offi-** cial capacity; Investigator Robert Garrison, individually and in his official capacity; Samuel Rodgers, individually and in his official capacity; John Doe 1 and John Doe 2, two unidentified officers from the Riverdale Police Force, individually and in their official capacities; and the City of Riverdale, Defendants.

**No. 97 C 6075.**

United States District Court, N.D. Illinois, Eastern Division.

March 30, 1999.

Donald R. Cassling, James Peter Fieweger, Jenner & Block, Chicago, IL, for plaintiff.

Dexter Saffold, Chicago, IL, pro se.

Steven M. Puiszis, Michael S. Nardulli, Hinshaw & Culbertson, Chicago, IL, for City of Calumet Park, Joseph Lucente, J. Beckham, defendants.

Jeffrey Richard Zehe, Mary Blake Nasenbenny, Chicago, IL, for City of Riverdale, Jeff Kraft, Robert Garritson, Samuel Rodgers, John Doe 1 and 2, defendants.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Dexter Saffold ("Saffold") brings this civil rights lawsuit alleging that he was unlawfully arrested and detained on August 27, 1996. Saffold's two-count second amended complaint ("complaint") asserts both federal and state law claims. In count I, Saffold claims that police officers from the City of Calumet Park, Illinois ("Calumet Park") and the City of Riverdale, Illinois ("Riverdale") violated 42 U.S.C. § 1983 when they arrested and detained him without probable cause. In count II, Saffold asserts that, under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2–109 ("Tort Immunity Act"), Calumet Park and Riverdale must pay any settlement or judgment that is entered in his favor against their respective police

officers. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Calumet Park moves for summary judgment on count II of Saffold's complaint. In a separate motion, Riverdale and its police officer Rodgers jointly move for summary judgment. Rodgers seeks summary judgment on count I against him and Riverdale asks for summary judgment in its favor on count II. For the following reasons, the court (1) denies Calumet Park's motion for summary judgment; and (2) denies Riverdale's and Rodgers' motion for summary judgment.

### Background

During a busy lunch hour, early in the afternoon on August 27, 1996, Dexter Saffold ("Saffold") drove to the only Burger King Restaurant in Calumet Park, Illinois and illegally parked his car in the handicapped parking space. Saffold's choice of parking spaces on this particular day turned out to be both unwise and untimely. There also happened to be a police officer from the Calumet Park Police Department ("CPPD") in the same Burger King parking lot.

After observing Saffold take the handicapped parking place and walk away from his car, CPPD officer Joseph Lucente ("Lucente") noticed that Saffold's car did not have a license plate which entitled its driver to use handicapped parking spaces. Lucente also could not see a placard in Saffold's car indicating that Saffold was handicapped. Lucente proceeded to issue a ticket for Saffold's illegally parked car.

Upon returning to his illegally parked car, Saffold found Lucente writing a parking ticket. When Saffold arrived to his car, Lucente asked Saffold to produce his driver's license, but Saffold resisted. Saffold briefly argued with Lucente over why Saffold should have to produce his driver's license for parking his car illegally, but eventually produced the license. However, because Saffold had initially refused to give Lucente his driver's license, Lucente called for back-up from additional CPPD police officers. Within a few minutes, two more CPPD police cars arrived at the Burger King Parking lot—one of the back-up police cars was a marked squad car and the other car was an unmarked car.

Eventually, Lucente issued Saffold the parking ticket and Saffold became visibly upset over receiving the citation. Saffold then got into his car, and, while leaving, squealed the tires of his car three times as he drove out of the parking lot. Upon observing Saffold's driving, CPPD officer John Beckham ("Beckham"), who had arrived in response to Lucente's call for back-up, activated his squad car's emergency lights and stopped Saffold's vehicle. Beckham warned Saffold about his unsafe driving and directed Saffold to leave the parking lot without further incident. Beckham did not issue Saffold a ticket for squealing his tires. Saffold claims that immediately after he left the Burger King parking lot, he returned to his home in Riverdale, Illinois.

Not surprisingly, since Saffold's run-in with the law happened during lunch hour in the parking lot of a fast food restaurant, several people witnessed the events. Saffold has submitted an affidavit in which he states that the Burger King where he parked his car is "located at the intersection of two busy streets." (Saffold Aff. ¶ 3.) Saffold states that "there were numerous individuals, both patrons of the restaurant and passersby, in the area at the time of the events in the parking lot." (*Id.*) Saffold also says that these events took place "in full view of the patrons entering and leaving the Burger King restaurant, those located in the restaurant, and passersby on the streets and sidewalks surrounding the restaurant and its parking lot." (*Id.* at 4.) Defendants do not dispute that several individuals were able to observe these events in the parking lot.

Approximately 15 to 20 minutes after Saffold's encounter with the Calumet Park police, a telecommunicator at the CPPD received an anonymous threatening phone

call. The caller was a male who identified himself only by stating that he had been stopped by a Calumet Park police officer at the Burger King parking lot. The caller threatened to shoot the officer the next time the officer stopped him. Although the police operator asked the caller for his name, the caller refused to identify himself other than by stating that he had been stopped in the Burger King parking lot. The CPPD telecommunicator who answered the call then informed the on duty Calumet Park police officers of the anonymous threatening call. Saffold, of course, denies that he made this threatening phone call.

Lucente, the officer who issued Saffold the parking ticket, spoke to the other CPPD officers on duty and verified that Saffold was the only person whose vehicle had been stopped in the Burger King parking lot that day. Shortly thereafter, Jeff Kraft ("Kraft") of the CPPD telephoned the Riverdale Police Department ("RPD") and asked for RPD's assistance in arresting Saffold, who CPPD wanted for aggravated assault stemming from a threat to shoot a police officer. Upon receipt of this information, RPD dispatched several police officers to Saffold's house in Riverdale and arrested Saffold pursuant to CPPD's request.

Saffold was held at the Riverdale police station for approximately thirty minutes until CPPD officers Kraft and Garrison arrived and transported Saffold to the Calumet Park police station. Several hours after arriving at the Calumet Park police station, Saffold was charged with aggravated assault based on allegations that he had telephoned the CPPD and threatened to shoot an officer. Although Calumet Park police officers transported Saffold to Markham County Jail, the prison refused to accept Saffold because of his diabetic condition. Saffold was then returned to the Calumet Park police station and released on his own recognizance.

Although Saffold was originally charged with aggravated assault and disorderly conduct, the state criminal court dismissed the aggravated assault charge, ruling that the threatening phone call did not constitute aggravated assault as a matter of law. The disorderly conduct charge was then amended to a charge of telephone harassment. After several continuances, Saffold's criminal case was dismissed for want of prosecution.

Saffold then brought this civil rights lawsuit alleging that his arrest and detention violated the Fourth and Fourteenth Amendments of the United States Constitution. In count I of his complaint, Saffold alleges that defendant police officers, acting in both their individual and official capacities, violated 42 U.S.C. § 1983 by arresting and detaining him without probable cause. In count II of his complaint, Saffold asserts that the Tort Immunity Act, 745 ILCS 10/2–109, requires the cities of Calumet Park and Riverdale to pay any settlement or judgment in Saffold's favor against their respective police officers. Defendants Riverdale, its police officer Rodgers, and Calumet Park have filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### Analysis

The court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must decide "whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). There is a genuine issue of material fact where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* On a

motion for summary judgment, the court reviews the evidence and draws all inferences "in the light most favorable to the nonmovant." *FDIC v. Knostman,* 966 F.2d 1133, 1140 (7th Cir.1992).

The central issue before the court is whether there was probable cause for Saffold's arrest. At first blush, this would seem to present only one question; however, because two different police departments played two distinct roles in Saffold's arrest, the court must analyze Saffold's claims in the context of each police department's actions. Additionally, in defense of their actions, Riverdale raises an argument that Calumet Park does not. Accordingly, the court will address Calumet Park's and Riverdale's motions for summary judgment separately.

## I. *Calumet Park's Motion for Summary Judgment*

Calumet Park first claims that the court should dismiss count II of Saffold's complaint because the Tort Immunity Act does not "provide a valid cause of action to the plaintiff nor does it provide an independent basis for the imposition of liability against the City of Calumet Park." (Calumet Park Mem. in Supp. of Mot. for Summ. J. at 3.) Calumet Park is correct that the Tort Immunity Act does not provide "a cause of action" or "an independent basis for the imposition of liability." *See, e.g., McCuen v. Peoria Park Dist.,* 245 Ill.App.3d 694, 185 Ill.Dec. 894, 615 N.E.2d 764, 768 (1993). That is to say, the Tort Immunity Act does not render Calumet Park and Riverdale vicariously liable for the acts of their police officers.

 However, while the Tort Immunity Act does not impute the liability of their officers to Calumet Park and Riverdale, the Act does require the cities to satisfy any monetary settlement or judgment entered against their officers. While the distinction between these two concepts is subtle, this difference requires the court to reject Calumet Park's argument that the court must dismiss count II. As the

Seventh Circuit explained in *Wilson v. City of Chicago,* 120 F.3d 681, 684–86 (7th Cir.1997), the Tort Immunity Act does not prohibit a plaintiff who is suing a municipal employee from joining the municipality as a defendant in a § 1983 lawsuit if the plaintiff is only seeking to compel the municipality to pay a judgment entered against its employee. *Id.* at 685. As the *Wilson* court observed, the plaintiff in such cases merely seeks a declaratory judgment that the municipality is liable for the judgment under the Tort Immunity Act. *Id.* In this case, Saffold pleaded count II within the confines of *Wilson*—he seeks to compel payment from the cities in the event that he obtains a judgment against their employee police officers. Therefore, under the Seventh Circuit's holding in *Wilson,* the court rejects Calumet Park's argument that the court must dismiss count II of Saffold's complaint.

Calumet Park next argues that the court should grant summary judgment in its favor because it cannot be forced to pay a judgment under the Tort Immunity Act. According to Calumet Park, a municipality cannot be held liable under the Tort Immunity Act where the municipal employee is not liable. Calumet Park asserts that its officers cannot be held liable because they had probable cause to arrest Saffold. Alternatively, Calumet Park claims that the doctrine of qualified immunity shields its police officers from any liability in this case. Therefore, Calumet Park argues that since its police officers are not liable for Saffold's arrest, the city cannot be forced to satisfy a settlement or judgment under the Tort Immunity Act.

 As noted, Calumet Park insists that its police officers cannot be liable for two reasons: (1) its officers had probable cause to arrest Saffold; and (2) even if the officers lacked probable cause, they are shielded by the doctrine of qualified immunity. Although Calumet Park makes these arguments separately, they form only one issue. As the Seventh Circuit explained in

*Northen v. City of Chicago,* 126 F.3d 1024, 1027 (7th Cir.1997), defendants in a false arrest case cannot raise both a "we had probable cause" defense and a qualified immunity defense. *Id.; see also Boyce v. Fernandes,* 77 F.3d 946, 947 (7th Cir.1996); *Mahoney v. Kesery,* 976 F.2d 1054, 1059 (7th Cir.1992). Rather, the two defenses merge and the only issue for the court to resolve is whether defendants had probable cause to carry out the disputed arrest. *Boyce,* 77 F.3d at 947; *see also Kelley v. Myler,* 149 F.3d 641, 648 (7th Cir.1998) (overlap between probable cause and qualified immunity renders the existence of probable cause the dispositive question); *Frazell v. Flanigan,* 102 F.3d 877, 886 (7th Cir.1996) (both probable cause and qualified immunity "turn on whether the officers' conduct was objectively reasonable under the circumstances").

As Chief Judge Posner explained in *Northen,* the policy that drives the qualified immunity defense seeks to protect public officials from unforeseeable changes in the law. *Northen,* 126 F.3d at 1027. However, because the "concept of probable cause has not changed in a great many years," *Boyce,* 77 F.3d at 948, "it is difficult to see what purpose would be served by a defense of immunity when conceived as a protection against changes or uncertainty in the law; and so the concepts of probable cause and official immunity could be thought in such a case to merge." *Northen,* 126 F.3d at 1027. Thus, as long as the concept of probable cause has not changed since the plaintiff's arrest and his lawsuit, the concepts of probable cause and qualified immunity become one defense. *Id.*

 The legal standards governing probable cause for an arrest have been well-settled for a long time and have not changed since Saffold's arrest. The Seventh Circuit has recently articulated the familiar probable cause standard by stating that:

[a] police officer has probable cause to arrest when, at the moment the decision is made, the facts and circumstances within her knowledge and of which she has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense. This flexible, commonsense approach does not require that the officer's belief be correct or even more likely true than false, as long as it is reasonable.

*Qian v. Kautz,* 168 F.3d 949, 953 (7th Cir.1999) (citations omitted). "The test, an objective one, is whether a reasonable officer would have believed the person had committed a crime," *Kelley,* 149 F.3d at 646, and is driven by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, must act. *Tangwall v. Stuckey,* 135 F.3d 510, 519 (7th Cir.1998). Ultimately, however, whether an officer had probable cause to make an arrest generally presents a question for the jury; that is, summary judgment is warranted only when the facts permit but one conclusion, that "no reasonable jury could find that the officer did not have probable cause to make an arrest." *Jones v. Webb,* 45 F.3d 178, 182 (7th Cir.1995).

 Calumet Park argues that its officers did have probable cause to arrest Saffold for threatening a police officer over the telephone. According to Calumet Park, the facts that (1) Saffold was the only person stopped in the Burger King parking lot that day; (2) was visibly upset over receiving the parking ticket; and (3) the threatening phone call was made just 15 to 20 minutes after the incident establish probable cause that Saffold placed the threatening phone call. Calumet Park also points out that the caller identified himself as the person who had been stopped in the Burger King parking lot. Calumet Park contends that this self-identification also provides an adequate connection between Saffold and the anonymous caller to justify Saffold's arrest.

In contrast, Saffold argues that the Calumet Park police did not have enough reliable information specifically linking him to the anonymous phone threat call to justify his arrest. In support of this argument, Saffold points out many deficiencies in the Calumet Park police's pre-arrest investigation which demonstrate that the police never linked Saffold to the anonymous threat. For example, the Calumet Park police did not trace the call to see if it came from Saffold's residence. Nor did the police obtain Saffold's phone records from the telephone company to verify whether Saffold placed the call. The Calumet Park police did not ask the CPPD operator who answered the anonymous threat to call and speak to Saffold to verify whether she recognized Saffold's voice as the caller who made the threat. Also, the officers who spoke to Saffold in the Burger King parking lot (Lucente and Beckham) never listened to the CPPD's tape recording of the anonymous threat to see if they recognized the caller's voice as Saffold's.

In addition to these deficiencies in the Calumet Park police's investigation, the anonymous caller who made the threat did not provide any specific facts that only Saffold would have known. Rather, the general facts that the caller provided would have been known by any of the several bystanders or Burger King patrons who observed the incident in the parking lot. For example, all the anonymous caller said was that he had been stopped by a Calumet Park police officer in the Burger King parking lot and that the next time that officer stops him, the caller is going to shoot that officer. The anonymous caller did not give any specific facts that only Saffold would have known such as: (1) that he received a parking ticket for parking in the handicapped parking space; (2) that officer Lucente made him produce his driver's license; (3) that he had then been stopped and warned for squealing his tires; or (4) the names of the police officers that stopped him.

Viewing the facts in the light most favorable to Saffold and drawing all reasonable inferences in his favor, the court finds a genuine issue of material fact over whether the Calumet Park police had probable cause to effect Saffold's arrest. Based on the totality of the facts surrounding Saffold's arrest, a reasonable jury could find that the Calumet Park police did not have probable cause to arrest Saffold. Although the facts emphasized by Calumet Park do suggest that Saffold may have made the anonymous threatening phone call, these facts alone do not irrefutably establish probable cause for Saffold's arrest. As Saffold points out, the facts relied on by Calumet Park do not specifically link Saffold to the anonymous call. While they suggest that Saffold may have made the call, the CPPD knew of no objective facts indicating that the anonymous caller and Saffold were the same person. Although Calumet Park police officers could have taken one of many steps to verify whether Saffold placed the anonymous phone call, they failed to do so. Based on this record, the court cannot say that a reasonable jury could only conclude that the Calumet Park police had probable cause to arrest Saffold. Accordingly, the court finds a genuine issue of material fact over the issue of whether the Calumet Park police had probable cause to arrest Saffold.

The cases Calumet Park relies on are clearly distinguishable from this case. For example, in *Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984), the Court found probable cause because a police officer recognized the voice of an anonymous caller based on his prior dealings with the defendant. *Id.* at 733–34. In stark contrast, this case involved absolutely no voice identification or any other objective verification that Saffold was the anonymous caller who made the threat. Instead, the Calumet Park police simply assumed that Saffold must have placed the call because he was the only person stopped in the Burger King parking lot that day. By making this as-

sumption, the police overlooked the fact that any one of several bystanders or Burger King patrons observed this incident and would have known all of the facts that the caller provided.

■ The court would not hesitate to find that the information relied on by the Calumet Park police satisfied the "reasonable suspicion" standard required to make an investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, because the Calumet Park police apparently had no specific facts which showed that Saffold actually placed the anonymous threatening phone call, there is room for doubt on the issue of whether there was probable cause to arrest Saffold. Since there is a genuine issue of material fact over whether Calumet Park's police officers had probable cause to effect Saffold's arrest, there is also a genuine issue of material fact over whether Calumet Park will have to satisfy a judgment or settlement under the Tort Immunity Act. Accordingly, the court denies Calumet Park's motion for summary judgment on count II of Saffold's complaint.[1]

## II. *Riverdale and Rodgers' Motion for Summary Judgment*

■ For the most part, Riverdale and Rodgers move for summary judgment for the same reasons as Calumet Park. Therefore, to the extent that the court's resolution of Calumet Park's motion applies to Riverdale's and Rodgers' motion for summary judgment, the court adopts and incorporates its previous analysis. However, even though the probable cause and qualified immunity defenses fail for Calu-

met Park, Riverdale and Rodgers make one argument that Calumet Park did not and cannot advance. Specifically, Riverdale and Rodgers assert that they should be granted summary judgment under *Whiteley v. Warden*, 401 U.S. 560, 568–69, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). According to Riverdale and Rodgers, under *Whiteley*, the Riverdale police had probable cause to arrest Saffold since they did so at the request of the Calumet Park police. Riverdale and Rodgers contend that the Riverdale police were entitled to assume that, based on Calumet Park's request, probable cause existed for Saffold's arrest.

In *Whiteley*, a county sheriff obtained an arrest warrant for a person suspected of burglary. The sheriff then issued a message through a statewide law enforcement radio network describing the suspect, his car, and the property taken. *Id.* at 564, 91 S.Ct. 1031. In reliance on the radio message, police in a another town stopped the subject and searched his car. The Supreme Court concluded that the sheriff who issued the message requesting the arrest lacked probable cause for the warrant. Accordingly, the Court held that the evidence obtained during the arrest and search by the other police department had to be excluded. However, the Court noted that the arresting police were entitled to act on the strength of the radio bulletin. "Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause." *Id.* at 568, 91 S.Ct. 1031.

---

1. Even if the court were required to analyze the qualified immunity issue separately from the probable cause issue, the court would still deny Calumet Park's motion for summary judgment. Under *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), a public official is entitled to qualified immunity as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *Id.* In this case, there can be no doubt that Saffold had a clearly established constitutional right to be free from arrest without probable cause. Similarly, based on the facts of this case as just discussed, there exists a genuine issue of material fact over whether a reasonable police officer would have known that there was no probable cause for Saffold's arrest.

The Court clarified *Whiteley* in *United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) where a warrantless *Terry* stop was made by one police department at the request of another police department. In *Hensley,* the Court concluded that if the request has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that request justifies a stop to check identification. *Id.* at 232, 105 S.Ct. 675. However, if the request had been issued in the absence of a reasonable suspicion, then a *Terry* stop in the objective reliance upon it violates the Fourth Amendment. The Court remarked, however, that "in such a situation . . . the officers making the stop may have a good-faith defense to any civil suit . . . It is the objective reading of the flyer or bulletin that determines whether other police officers can defensively act in reliance on it." *Id.* at 232, 105 S.Ct. 675. The Third Circuit has interpreted *Whiteley* and *Hensley* to create a defense to a civil suit if the arresting officer's reliance on the arrest bulletin was reasonable under the circumstances. *Capone v. Marinelli,* 868 F.2d 102, 105–06 (3d Cir.1989).

Based on the facts of this case, the court cannot say as a matter of law that the Riverdale police reasonably relied on Calumet Park's request to arrest Saffold. The only facts Riverdale mentions regarding Saffold's arrest is that Riverdale received a phone call from officer Kraft of Calumet Park in which Kraft told Riverdale police that Calumet Park police wanted Saffold for threatening to shoot a police officer. (*See* Riverdale's 12(m) Stmt. ¶¶ 15–16.) Based on this request, the Riverdale police dispatched officer Rodgers to Saffold's

house where he and other Riverdale police officers arrested Saffold. (*Id.* at ¶¶ 17–19.)

A fair reading of *Whiteley, Hensley,* and *Capone* suggests that in order to raise a defense to a civil suit, neighboring police officers must show that they reasonably believed that the requesting police department had a valid basis to seek the arrest. In this case, there are no facts in the record that enable the court to determine whether Riverdale's reliance on Calumet Park's request to arrest Saffold was reasonable. All the court knows from this record is that (1) the Calumet Park police called the Riverdale police; (2) asked the Riverdale police to go arrest Saffold; and (3) acting on this request, the Riverdale police arrested Saffold. The court knows nothing of the content of the communication between the police departments. For example, the court does not know if Calumet Park explained to Riverdale·the circumstances which led Calumet Park police to believe that Saffold had made the anonymous threat. Nor does the record contain any evidence suggesting that the Riverdale police took any steps to verify whether there was a warrant for Saffold's arrest or whether the Calumet Park police actually had probable cause to seek Saffold's arrest. In the absence of facts speaking either to the reasonableness or unreasonableness of Riverdale's response to Calumet Park's request, the court must deny Riverdale's and Rodgers' motion for summary judgment.[2]

### Conclusion

The court (1) denies Calumet Park's motion for summary judgment [doc. 42–1]; and (2) denies Riverdale's and Rodgers' motion for summary judgment [doc. 46–1].

---

2. Although it may seem minor, the court notes another factual distinction between this case and *Whiteley, Hensley,* and *Capone.* In this case, the request for assistance to arrest Saffold was made by telephone. In contrast, the requests in *Whiteley, Hensley,* and *Capone* all came over official modes of communication accessible only to police departments. The fact that the Riverdale police relied on a simple phone call (that, for all practical purposes, could have been placed by anybody with a telephone), rather than an official police bulletin issued through a mode of communication accessible only to law enforcement officials, speaks to the unreasonableness of Riverdale's response to Calumet Park's request.

The parties should discuss settlement before the next court date.