NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3260
_____

DAVID WHITE,
                    Appellant

v.

CORPORAL MICHAELANN ANDRUSIAK;
AGENT NEWTON CONDICT, IV; AGENT KEITH TAYLOR;
OFFICER JOHN KURYAN; DETECTIVE LOUIS GRANDIZIO;
DETECTIVE JOHN KELLY; DETECTIVE BUCCI;
THE COUNTY OF DELAWARE; THE CITY OF CHESTER
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-14-cv-07045)
District Judge:  Hon. Mark A. Kearney
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 12, 2016

Before:   SMITH, JORDAN, and RENDELL, *Circuit Judges*.

(Filed: July 15, 2016)
_____

OPINION*
_____

_____

   * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

David White appeals from an order of the United States District Court for the

Eastern District of Pennsylvania granting summary judgment for the defendants,

Michaelann Andrusiak and Newton Condict, IV.  For the reasons that follow, we will

affirm.

## I.      Background[1]

In 1998, White was convicted in Pennsylvania of two counts of rape and was

sentenced to 11 1/2 to 32 years' incarceration.  He was granted parole and released from

custody in February 2012, under the supervision of the Pennsylvania Board of Probation

& Parole.  In July 2012, Condict became White's parole officer.  Due to the nature of

White's conviction, he was required to inform the State Police within 48 hours of any

change in his address or employment under Pennsylvania's sexual offender registration

law, also known as "Megan's Law."  On September 19, 2012, White relocated from 804

West 3rd Street in Chester to 927 Upland Street in the same town.  White promptly

reported the change of address to Condict, who approved the move verbally and then

confirmed White's new residence by meeting him there in person two days later.

The following day, White went to the State Police barracks to register his new

address, as required by Megan's Law.  He worked with Corporal Andrusiak to complete

---

[1] Because this case reaches us on appeal from an order of summary judgment
against White, we consider all disputed facts in his favor and recount the background
facts in accordance with White's version of events.  *Orsatti v. New Jersey State Police*,
71 F.3d 480, 482 (3d Cir. 1995).

that task.[2]  White informed Andrusiak that his new address was 927 Upland Street; she

recorded that information by hand, then left White in the lobby while she entered the

change into the computer system.  Unfortunately for White, Andrusiak erroneously

entered the new address as 920 Upland Street.  Andrusiak brought White back to where

the computer was located and had him sign an electronic signature pad confirming his

change of address.  The erroneously entered address on the computer screen was not

visible to White at that time.  Andrusiak then provided White with a printout showing

that his address had been changed to 920 Upland Street.  White never looked at the

printout.

The Delaware County Police Department ("DCPD"), in partnership with the

United States Marshals Service, began an initiative in early September 2012 to verify the

addresses of all the registered sex offenders in the County.  As part of that initiative,

Sergeant John Kelly of the DCPD and a team of other law enforcement officials

(collectively "investigators") consulted the Pennsylvania State Police database for

White's address.  Based on the information in that database, investigators looked for

White at the 804 West 3rd Street address on September 11.  White was not there, and the

investigator responsible for the check reported the house as abandoned.  Investigators

consulted the database again in early October and found that White's new registered

address was 920 Upland Street.  Investigators then visited that address on October 10 and

---

[2] Andrusiak was among the original named defendants and was granted summary judgment by the District Court. *White v. Andrusiak*, No. CV 14-7045, 2015 WL 4999492, at *1 (E.D. Pa. Aug. 19, 2015).  She is not a party to this appeal. (*See infra* note 5.)

were advised by the residents that White did not live there and that they did not know him. The investigators checked at the address twice more on October 23, but no one answered the door. Based on those fruitless efforts, Kelly filed a criminal complaint and submitted an affidavit of probable cause to a magistrate on December 11, asserting that White had violated his Megan's Law obligations. The magistrate issued a warrant for White's arrest the following day.

The next day, Condict received an electronic notification that a warrant had been issued for White's arrest. He arranged a meeting with White and, when they met, took him into custody. Condict had not yet seen the affidavit of probable cause, the physical warrant, or the criminal complaint. There is no evidence that he knew the details of the charge against White. Condict then contacted the DCPD and informed them that he had arrested White. DCPD authorities assumed custody of White later that day. At some point, but no more than "a week or so" later, Condict received the criminal complaint. (Reproduced Record at 37.)

White was charged with violating Megan's Law and held on $100,000 bail, which he never posted. Condict did not contact Kelly or the prosecutor to discuss White's address or the discrepancy between their records. On April 19, 2013, the prosecutor subpoenaed the parole board records for White, which included Condict's documentation of White's correct address as 927 Upland Street. Despite being faced with a state record confirming that White lived at the address he had been proffering since his arrest, the prosecutor chose to bring the case to trial. After two days of trial in July 2013, White was found not guilty.

4

White then brought this suit in the United States District Court for the Eastern District of Pennsylvania against a host of state and local parties under various theories of liability, including a § 1983 allegation against Condict for false arrest and false imprisonment.[3]  The number of defendants and allegations was winnowed, and the case ultimately concluded via two summary judgment orders in favor of the remaining defendants.  Relevant to this appeal, the District Court granted summary judgment in favor of Condict on the ground that White had adduced no evidence that Condict lacked probable cause for the arrest, thus undermining White's claims.  *White v. Andrusiak*, No. CV 14-7045, 2015 WL 4999492, at *4-6 (E.D. Pa. Aug. 19, 2015).  In the alternative, the Court concluded that Condict was protected by qualified immunity.  *Id.* at *7.  White timely appealed.

## II.    Discussion[4]

"For a plaintiff to recover under § 1983, [he] must establish that the defendant acted under color of state law to deprive the plaintiff of a right secured by the Constitution."  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  In a § 1983

---

[3] White also made a claim against Condict for malicious prosecution, but he did not present any arguments regarding malicious prosecution in his briefing before us. Consequently, that argument is waived. *See United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").

[4] The District Court had jurisdiction to hear the § 1983 claim under 28 U.S.C. §§ 1331 and 1343, and jurisdiction over the related state-law questions under 28 U.S.C. § 1367. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. Our review of a grant of summary judgment is plenary; we apply the same standard as the District Court. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

proceeding where there is no theory of vicarious liability, a state actor "is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Our inquiry therefore begins and ends with Condict's actions, specifically whether Condict violated White's Fourth and Fourteenth Amendment rights by arresting and imprisoning him.[5]

To make out either a false arrest or false imprisonment claim, White needed to demonstrate that his arrest was unsupported by probable cause. *See Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (proving false arrest requires a showing of an absence of probable cause); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (citing *Baker v. McCollan*, 443 U.S. 137, 143-44 (1979)) ("[A]n arrest based on probable cause [cannot] become the source of a claim for false imprisonment."). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti*, 71 F.3d at 483.

Here, the probable cause underlying Condict's arrest of White is beyond dispute. At the time he brought White into custody, Condict knew that a warrant had been issued for White's arrest. Consequently, he knew, despite having not seen the underlying documents, that a law enforcement officer had presented a neutral magistrate with

---

[5] The case involved additional defendants and allegations below, but the present appeal challenges only the District Court's grant of summary judgment in favor of Condict regarding the false arrest and false imprisonment allegations.

sufficient evidence for the magistrate to sign a warrant for White's arrest.[6]  That fact

alone is enough for a reasonable person to conclude that White had committed an

offense.  Condict was entitled to rely on the notification system that alerted him of the

outstanding warrant.  *See Capone v. Marinelli*, 868 F.2d 102, 105 (3d Cir. 1989)

(confirming that an officer's "reliance upon the bulletin [of another police department]

cannot be said to have been unreasonable" when that bulletin "expressly stated that a

warrant existed for the arrest" of the defendant).  Because Condict's arrest of White was

made with probable cause, White cannot support his claim that it constituted false arrest.

And, because our precedent specifically precludes a false imprisonment claim for

imprisonment following an arrest based on probable cause, *Groman*, 47 F.3d at 636, that

claim must fail as well. [7]

---

[6] We note that this case is somewhat unusual in that the officer who took the defendant into custody was involved in neither the investigation nor the application for a warrant.  As we noted in *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000), an officer cannot defeat a false arrest allegation by pointing to a warrant if that officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause" (internal quotation marks omitted).  Because Condict was not involved in the warrant application, and only his conduct is at issue in this case, what was or was not said to the magistrate is irrelevant. As a third party to the warrant process, he was entitled to rely on that warrant as definitively establishing probable cause.

[7] White raises several issues regarding what Condict should have done once he had received the criminal complaint and noticed the inconsistencies.  However, by that time, the arrest had already been effectuated.  White argues that Condict had a duty to inform the police or prosecutor when he learned that he had exculpatory information in his possession.  Our sister Circuits are split on this issue, and we have thus far declined to take a position.  That being the case, any right on the part of White to have Condict take such action would not constitute a "constitutional right that was clearly established at the

We note that we are not without sympathy for White. It is troubling indeed that he spent nearly eight months in custody as a result, ostensibly, of a typographical error. One might question why the investigating officer did not confer with White's parole officer before seeking the warrant, or why the prosecutor chose to pursue this case despite being presented with exculpatory evidence from the state's own records. Nevertheless, White has failed to produce evidence that could support a holding that Condict violated his constitutional rights.

## III.   Conclusion

For the foregoing reasons, we will affirm the order of the District Court.

---

time of the challenged conduct," and Condict would thus be protected by qualified immunity. *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).